UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Francisca Briones-Martinez, )<br>Reyna Briones Martinez, )<br>Victor Pinillos, )<br> )<br>On behalf of themselves and )<br>all others similarly situated, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>Primotions, LLC, )<br>Vincent Toscano, )<br>Louis Gennusa, )<br>Enrico Burgio, )<br> )<br>Defendants. )<br>_____ ) | (Collective Action)<br>Jury Trial Demanded<br><br>November 2, 2018 |

## COLLECTIVE ACTION COMPLAINT

1. Plaintiffs Francisca Briones-Martinez, Reyna Briones Martinez, and Victor Pinillos ("Plaintiffs") worked grueling hours for Defendants in their printing shop. For years, they endured demeaning insults, yelling, and derogatory comments about their ethnicities, and performed intense physical labor while routinely working well in excess of forty (40) hours per week. Defendants, in return, failed to do the bare minimum by compensating Plaintiffs in accordance with the law. Despite the requirements of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.*. and Connecticut wage statutes, 31 Conn. Gen. Stat §31-58, *et seq.*, Defendants maintained a policy of withholding all overtime premiums from Plaintiffs prior to 2018. In fact, Plaintiff Briones-Martinez was terminated after she demanded compensation for overtime.

2. Plaintiffs allege on behalf of themselves and all other similarly situated current and

1

former employees of Defendants who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime hours worked for which they did not receive overtime premium pay as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C, §§ 201 *et seq.*

3. Plaintiffs Briones-Martinez and Briones Martinez further complain and seek compensation for work they performed that was wholly uncompensated due to Defendants' unlawful time-shaving practice—at times, work for which they were entitled to an overtime premium.

4. Plaintiff Briones-Martinez additionally complains and seeks damages for her retaliatory termination, as provided under the FLSA, 29 U.S.C. § 215(a)(3).

## Jurisdiction and Venue

5. This court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337, and 1343.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this Complaint occurred within this judicial district.

## Parties

7. Plaintiffs Francisca Briones-Martinez, Reyna Briones Martinez, and Victor Pinillos are residents of Connecticut and former employees of the Defendants.

8. Defendant Primotions, LLC ("Primotions") is a domestic corporation registered in Connecticut with a business address of 2 Raccio Park Rd., Hamden, CT, 06514.

9. Defendant Vincent Toscano is the owner and principal of Primotions.

10. Defendant Louis Gennusa is a resident of Hamden, CT and is the Production Manager of Primotions.

11. Defendant Enrico Burgio is a floor manager or supervisor at Primotions.

12. Defendants Toscano, Gennusa, and Burgio made all relevant decisions, or delegated the power to make relevant decisions, regarding hiring, payment of wages, scheduling, and work duties of Plaintiffs at Primotions. Defendants exercised these powers over Plaintiffs.

13. For example, Defendant Toscano decided how many employees could be working at Primotions at a given time.

14. For example, Defendant Gennusa maintained employment records in his office, terminated Ms. Briones-Martinez, and made decisions about the speed at which machines used by Plaintiffs were to be run, which directly affected their conditions of employment.

15. For example, Defendant Burgio assigned tasks to Defendants on a daily basis, dictated when their shifts would end on a daily basis, and at times unilaterally made decisions about whether to pay Plaintiffs when they pointed out discrepancies in payment.

## Factual Background

### I. Defendants' Employment of Plaintiffs

#### a. *Plaintiff Francisca Briones-Martinez*

16. Defendants hired Plaintiff Francisca Briones-Martinez in March 2014. Before being hired, Ms. Briones-Martinez worked for Defendant Primotions through a temp agency. Ms. Briones-Martinez's employment was terminated by the Defendants on May 11, 2018.

17. Ms. Briones-Martinez's regular wage ranged between $10 and $11 per hour during her employment.

18. Ms. Briones-Martinez wrote down the number of hours that she worked daily while employed by Defendant. Excluding the slow weeks when Defendants' shop did little work (usually in parts of December and January), Ms. Briones-Martinez worked an average of: 65 to 70 hours

per week in 2014; 65 to 70 hours per week in 2015; 50 to 55 hours per week in 2016; and 45 to 50 hours per week in 2017.

19. Until in or around late January 2018, she was never paid an overtime premium.

### b. *Plaintiff Reyna Briones Martinez*

20. Plaintiff Reyna Briones Martinez was employed by the Defendants from February 2016 to April 2017.

21. Reyna Briones Martinez's regular wage ranged from $10 to $10.25 per hour during her employment.

22. She too wrote down her hours daily. In 2016, excluding the slow weeks of December, she worked for the Defendants for an average of 50-55 hours per week. In January 2017, she worked approximately 20 hours total. In February, March, and April 2017, she resumed working an average of 50-55 hours per week.

23. She was never paid an overtime premium.

### c. *Plaintiff Victor Pinillos*

24. Plaintiff Victor Pinillos was employed by the Defendants from August 2012 to March 2016.

25. Prior to his employment at Primotions, he worked for another printing company called Connecticut Color, where Defendant Burgio was also employed as his manager.

26. Plaintiff Pinillos' regular wage at Primotions was approximately $10 per hour.

27. Excluding the slow weeks when Defendants' shop did little work (usually in parts of December and January), every month during his employment at Primotions, Mr. Pinillos performed 30-40 hours of overtime work (i.e., work in excess of 40 hours over one week).

28. He was never paid an overtime premium.

## II. Plaintiffs' Oppressive and Demeaning Work Conditions

29. Defendant Burgio subjected Plaintiffs to demeaning and derogatory insults over the course of their employment by Defendants.

30. Defendant Burgio regularly cursed at Plaintiffs and other employees.

31. Defendant Burgio's racial remarks were particularly demeaning.

32. When he perceived deficiencies in their work, Defendant Burgio would curse at them and insult their heritage, singling out the target's perceived nationality (e.g., Mexican, Guatemalan, or Peruvian) for ridicule.

33. Moreover, Defendant Burgio insisted that they keep the printing machines moving at a high speed, despite the physical toll this took on the workers on the production line.

34. Sometimes, Defendant Burgio would cite Defendant Gennusa's orders when requiring that the machines stay at high speed.

35. On at least two instances, Plaintiff Reyna Briones Martinez requested that the machine's speed be lowered because she was pregnant and she was worried about the exertion's effect on her child's health.

36. For the same reason, she requested that she not have to carry particularly heavy stacks of paper while pregnant.

37. Defendant Burgio did not grant either request. He told Plaintiff Reyna Briones Martinez not to slow down, and even required her to carry stacks of paper heavier than those others carried.

38. In response to these requests, Defendant Burgio would tell Plaintiff Reyna Martinez that if she would not comply with his orders, she should just leave and not come back.

39. Because she was raising one child alone and had another on the way, however,

leaving was not an option.

40. Defendant Burgio would often not even let Plaintiffs or other employees leave the production line to go to the bathroom.

41. Further, Defendant Burgio would often not permit Plaintiffs or other employees to drink water while on the production line.

42. He would forbid them from drinking water during the physically grueling work he required of them because he did not want them to stop work for the bathroom later.

43. Plaintiff Pinillos informed Defendant Toscano of Defendant Burgio's mistreatment of the employees.

44. As CEO, Defendant Toscano had the power to end such abuse. He did not.

### III. Defendants' Withholding of Overtime

45. Defendants began paying an overtime premium in or around late January of 2018.

46. Defendants have never paid Plaintiff Francisca Briones-Martinez any overtime premium for work performed in 2014, 2015, 2016, 2017, or 2018 prior to the policy change. Nor have they ever paid Plaintiffs Reyna Briones Martinez and Victor Pinillos any overtime premium.

47. Defendants paid their employees per two-week period. Each pay day following a period in which they worked over 80 hours, Defendants gave Plaintiffs two envelopes, stapled together: one containing an "Earnings Statement" that recorded the amount that had been paid via direct deposit—which compensated each for 80 hours of work at the regular rate—and one envelope containing cash.

48. The cash payments were for hours worked in excess of 80 hours.

49. For these overtime hours, Plaintiffs were compensated at their regular rate—not at the overtime rate required by law.

50. In or around 2012, Plaintiff Victor Pinillos spoke with Defendant Burgio and inquired about Primotion's overtime pay practices and how they differed from those of Connecticut Color.

51. Both had previously worked at Connecticut Color, where employees such as Pinillos were paid an overtime premium as required by law.

52. As a supervisor at Connecticut Color, Defendant Burgio personally dispensed overtime premium payments as required by law.

53. Defendant Burgio informed Pinillos that at Primotions, overtime hours would be compensated at the regular rate in cash.

54. Through the method described above, Defendants willfully withheld Plaintiffs' overtime premiums for the thousands of hours of overtime work they performed for Defendants' benefit.

## IV. Defendants' Time-Shaving Practice

55. On information and belief, Defendants' time punch machine rounded to the subsequent quarter-hour when employees would clock in to work after the hour.

56. Plaintiff Francisca Briones-Martinez clocked in to work approximately five to six minutes after the hour approximately two times per week from March 2014 to February 2016, and from April 2017 to May 2018.

57. Upon clocking in to work, Plaintiff Briones-Martinez would begin work immediately.

58. Thus, over these months, she was not paid for 18-20 minutes of work performed every week.

59. From February 2016 to April 2017, Plaintiff Francisca Briones-Martinez clocked

in to work on or about five or six minutes after the hour an average of approximately two times in each two-week period.

60. Thus, over these months, she was not paid for an average of 9-10 minutes of work performed every week.

61. For the entire time she was employed at Primotions, February 2016 to April 2017, Plaintiff Reyna Briones Martinez clocked in to work on or about five to six minutes after the hour an average of approximately two times per two-week period.

62. Upon clocking in to work, Plaintiff Briones Martinez would begin work immediately.

63. Thus, over these months, she was not paid for an average of 9-10 minutes of work performed every week.

64. Defendants would check their time punch machine to determine hours and were familiar with how it operated.

65. Defendant Burgio worked in the same room as Plaintiffs Briones-Martinez and Briones Martinez and would see at what time they clocked in and began work.

**V. The Retaliation Against Plaintiff Francisca Briones-Martinez**

66. As described in Paragraph 47, *supra*, on each payday following a period that included overtime work, Defendant Burgio gave Plaintiffs an "Earnings Statement" and envelope of cash.

67. On multiple occasions, Ms. Briones-Martinez was not paid at all for some of the overtime hours that she had worked. In such instances, she would inform Defendant Burgio.

68. Upon Ms. Briones-Martinez telling Defendant Burgio that she had not been compensated correctly, he would sometimes become enraged, yelling and/or cursing at Ms.

Briones-Martinez and ordering her back to work.

69. In or around March 2016, Ms. Briones-Martinez and a few coworkers met with Defendants Gennusa and Burgio to discuss problems with pay, among other problems in the workplace. Ms. Briones-Martinez was outspoken in this meeting.

70. Ms. Briones-Martinez asked Defendants Gennusa and Burgio to give them an overtime premium for hours worked over forty per week.

71. She further asked Defendants to pay them for their overtime hours by check or direct deposit rather than cash.

72. Defendants refused.

73. On March 23, 2018, Ms. Briones-Martinez and a coworker went to Defendant Burgio to inform him that they had not been paid an overtime premium for eight overtime hours worked in their most recent pay period.

74. Defendant Burgio refused to compensate Ms. Briones-Martinez and her coworker for the missing overtime pay.

75. Refusing to work hours for which they would not be accurately paid, Ms. Briones-Martinez and her coworker left work.

76. Ms. Briones-Martinez's belief that she would not receive legally-mandated compensation for the hours in question was well-founded. In addition to Defendant Burgio's refusal to compensate her on that occasion, Ms. Briones-Martinez and her co-workers had never been paid overtime until in or around late January of 2018. Moreover, the whims of Defendant Burgio would dictate when Defendants would pay their employees for uncompensated hours when confronted with pay discrepancies. As illustrated in Paragraph 68 *supra*, when employees would bring such a discrepancy to his attention, at times he refused to pay and would instead hurl insults

9

at them and order them back to work.

77. After they demanded their overtime pay and left work, Defendant Burgio communicated with Ms. Briones-Martinez and her coworker separately on the phone and implored them to return to work. While her co-worker complied, Ms. Briones-Martinez did not.

78. In that conversation, Defendant Burgio told Ms. Briones-Martinez that she could not return to work for two days.

79. Ms. Briones-Martinez asked Defendant Burgio for a letter stating that the reason she had left work was because she had not received pay for the hours that she had worked. He never provided such a letter.

80. In that conversation, Plaintiff Briones-Martinez informed Defendant Burgio that she was going to talk to the Department of Labor and was going to fight to be paid for the hours that she had worked.

81. In retaliation for Plaintiff Briones-Martinez standing up for her overtime rights, Defendants Gennusa and Burgio terminated her.

## Collective Action Allegations

82. Plaintiffs bring their FLSA claim, based on Defendants' policy of not paying an overtime premium, on behalf of themselves and all current or former Primotions employees who worked on the production line at any time before February 2018 and who elect to opt in to this action (the "FLSA Collective").

83. On information and belief, Defendants employed approximately nine (9) employees at any given time who worked on the production line in the period before in or around late January of 2018. Due to turnover, many more than nine employees have worked on Defendants' production line subject to Defendants' policy of withholding overtime premiums.

10

Almost all of these employees routinely worked a substantial number of overtime hours.

84. These employees did or do not regularly and customarily perform the duties and responsibilities of an exempt employee and are entitled to overtime compensation. Accordingly, there are numerous similarly situated current and former employees of Defendants who have been denied one and one-half times their regular rate of pay for some or all hours worked in excess of 40 hours per week in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

85. All of the work that Plaintiffs and the FLSA Collective performed was assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

86. Prior to sometime in or around late January of 2018, Defendants failed to pay the FLSA Collective an overtime premium for hours worked in excess of 40 per week.

87. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes but is not limited to willfully failing to pay Plaintiff and the FLSA Collective members an overtime premium for hours that they worked in excess of 40 hours per week.

88. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiffs and FLSA Collective members an overtime premium for hours worked in excess of 40 per week

89. Defendants were aware, or should have been aware, that Plaintiffs and the FLSA

11

Collective members did not regularly or customarily perform exempt duties and responsibilities.

90. Defendants' willful and unlawful conduct has been widespread, repeated, and consistent.

### COUNT ONE – FAIR LABOR STANDARDS ACT
(Overtime—Collective Action Claim)

91. By the conduct descried above, Defendants violated the right of Plaintiffs and the FLSA Collective to be paid an overtime premium consistent with the provisions of FLSA, 29 U.S.C. § 201, et seq.

92. Defendants' conduct as described above was in willful violation of the Plaintiff's rights pursuant to the Fair Labor Standards Act, 29 U.S.C. Sec. 201, *et. seq.* As a result of the Defendants' unlawful conduct, Plaintiffs and the FLSA Collective suffered a loss of compensation from employment that is due and owing to them.

93. At all times relevant, Plaintiffs and the members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

94. The overtime wage provisions set forth in the FLSA apply to Defendants and protect Plaintiff and the FLSA Collective.

95. Defendants are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

96. At all times relevant, Plaintiff and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

97. Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

98. Defendants employed Plaintiffs and the members of the FLSA Collective as their

employer.

99. As a result of Defendants' violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied their overtime premiums in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U. S.C. §§ 201 *et seq.*

### COUNT TWO – FAIR LABOR STANDARDS ACT
**(Retaliation)**

100. By the conduct described above, Defendants retaliated against Ms. Briones-Martinez for engaging in protected activity, in violation of provisions of the Fair Labor Standards Act, 29 U.S.C. Sec. 215.

101. As a result of the Defendants' unlawful conduct, Ms. Briones-Martinez suffered lost wages in an amount to be determined at trial, and is entitled to such amount, backpay, prejudgment interest, attorneys' fees, and compensatory damages for the emotional distress inflicted upon her by Defendants' retaliatory termination.

### COUNT THREE – CONNECTICUT GENERAL STATUTES § 31-58, *et seq.*
**(Overtime)**

102. By the conduct described above, Defendants have denied Plaintiffs overtime wages in violation of Conn. Gen. Stat. §§ 31-60a and 31-76c.

103. Defendants' violation of the Connecticut General Statutes was made in bad faith, and was arbitrary and/or unreasonable.

104. As a result of Defendants' unlawful conduct, Plaintiffs suffered a loss of compensation from employment that is due and owing to them.

## COUNT FOUR – CONNECTICUT WAGE PAYMENT LAW
### (Time-Shaving)

105. By the conduct described above, Defendants have denied Plaintiffs Francisca Briones-Martinez and Reyna Briones Martinez all wages due in violation of the Connecticut Wage Payment Law, 31 Conn. Gen. Stat. 31-71, *et seq*.

106. Defendants' violation of the Connecticut General Statutes was made in bad faith, and was arbitrary and/or unreasonable.

107. As a result of Defendants' unlawful conduct, Plaintiffs suffered a loss of compensation from employment that is due and owing to them.

### Prayer for Relief

WHEREFORE, Plaintiffs pray that the Court award them:

1. All compensation due and owing to them by the Defendants;
2. Liquidated damages in equal amounts to their unpaid overtime wages, pursuant to 29 U.S.C. Sec. 216(b);
3. Double damages for any violation of Conn. Gen. Stat. § 31-76c, pursuant to Conn. Gen. Stat. § 31-68;
4. Double damages for any violation of Conn. Gen. Stat. § 31-71, pursuant to Conn. Gen. Stat. § 31-72;
5. Plaintiffs/ costs and reasonable attorney's fees pursuant to 29 U.S.C. Sec. 216(b) and Conn. Gen. Stat. §§ 31-68 and 31-72;
6. Such other legal or equitable relief as the Court may deem just.

DATED: November 2, 2018                                  Respectfully submitted,

                                                                              THE PLAINTIFFS

                                                                              By: _/s/_____

James Bhandary-Alexander
ct28135
New Haven Legal Assistance Assoc.
426 State Street
New Haven, CT 06510
(203) 946-4811
(203) 498-9271 fax
Email: jbhandary-alexander@nhlegal.org
Plaintiffs' Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2018, a copy of the foregoing Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_/s/_____
James Bhandary-Alexander